UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                   :

**NADIA PADMORE**,
                                   :

               Plaintiff,         :

                                   :   **MEMORANDUM DECISION AND ORDER**

          – against –        :

                                   :   24-CV-6872 (AMD) (TAM)

**SDH SERVICES WEST, LLC,**
                                   :

             Defendant.     :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against her former employer, SDH Services West, LLC, alleging violations of the Fair Labor Standards Act ("FLSA"), Family and Medical Leave Act ("FMLA"), and New York Labor Law ("NYLL").  The plaintiff alleges that the defendant failed to pay her wages — including unpaid overtime pages, wage deductions, and unpaid severance — paid her late, failed to give her pay notices and wage statements, and terminated her in retaliation for taking FMLA leave.  The plaintiff seeks her unpaid overtime wages and wage deductions, damages for her loss of income, liquidated damages, prejudgment interest, costs and reasonable attorneys' fees.

Before the Court is the defendant's motion to compel arbitration.  For the reasons below, the defendant's motion is granted.

# BACKGROUND[1]

## I.      The Plaintiff's Employment

The defendant SDH Services West, LLC, a subsidiary of Sodexo, Inc., operated restaurants and food outlets, including at JFK Airport.  (ECF No. 1 ¶ 11; *see also* ECF No. 20-1.) The defendant employed the plaintiff from November 2022 to September 2024.  (ECF No. 1 ¶ 15; ECF No. 20-2, Letter dated November 1, 2022 to Nadia Padmore from Sodexo ("Offer Letter") at 2.)[2]  The plaintiff worked at JFK Airport, and was responsible for "setting up outlets, cleaning up, loading/unloading, packing, unpacking, moving, [and] serving food."  (ECF No. 1 ¶ 16.)  The plaintiff was an hourly employee; she worked around 55 hours a week at a rate of $50.48 an hour, and generally worked five to seven days a week.  (*Id.* ¶¶ 17–18.)

The defendant did not pay the plaintiff any wages for her "overtime hours" — hours worked over 40 hours in a weekly pay period.  (*Id.* ¶¶ 19–20.)[3]  The defendant also did not reimburse the plaintiff for her cell phone and internet expenses, which she incurred as part of her employment.  (*Id.* ¶ 21.)  The defendant paid the plaintiff "later than weekly — on a bi-weekly basis."  (*Id.* ¶ 22.)  The defendant did not give the plaintiff pay notices or wage statements; the

---

[1] The facts are drawn from the complaint, the parties' briefs, and the exhibits appended to the briefs.  *See Faggiano v. CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is . . . necessary[] to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006))).

[2] The plaintiff says she began working for the defendant "in or around September 2022" (ECF No. 1 ¶ 15), but her offer letter says that the "effective date for [her] new position is November 10, 2022" (ECF No 20-2, Offer Letter at 2).

[3] The plaintiff should have been paid an overtime rate of "at least 1.5 times her regular rate of pay for each and all hours worked in excess of forty hours each week."  (ECF No. 1 ¶ 24.)

plaintiff alleges that she did not know that she was being underpaid because she did not receive these statements.  (*Id.* ¶¶ 25–27.)[4]

At the end of May 2024, the plaintiff went on FMLA leave because of a health condition. (*Id.* ¶ 37.)  The defendant approved the plaintiff's FMLA leave request, but did not preserve her position or reinstate her.  (*Id.*)  The defendant terminated her soon after she returned to work on June 30, 2024.  (*Id.*)  The plaintiff asserts that the defendant discriminated and retaliated against her by terminating her for taking protected leave.  (*Id.*)

## II.    The Arbitration Agreement

When the plaintiff was hired, she received an offer letter with an attached "terms of employment statement" that detailed the terms and conditions of her employment.  (ECF No. 21 at 8; ECF No. 20-2, Offer Letter at 3.)  The letter contained the following provision:

> ### ARBITRATION AGREEMENT:
>
> As a condition of your employment, you are also required to sign and comply with an Employment Arbitration Agreement. The Agreement and Frequently Asked Questions (FAQs) are available on Sodexo's Employee On-Boarding Portal. Please review this information carefully, as the program affects the legal rights of both you and the Company (including a waiver of the right to bring a civil action in federal or state court before a civil judge or jury, as well as a waiver of the right to bring or participate in a class action, collective action or representative action). Please note that we must receive your signed Agreement before your first day of employment.

(ECF No. 20-2, Offer Letter at 3.)  The plaintiff signed the offer letter on November 1, 2022 and verified that she "read and accept[s] this employment offer and the Terms of the Employment Statement."  (ECF No. 21 at 9; ECF No. 20-2, Offer Letter at 5.)

---

[4] The plaintiff also alleges that the defendant did not "display federal and state minimum wage/overtime posters" and "notify Plaintiff of her federal and state minimum wage and overtime rights and failed to inform Plaintiff that she could seek enforcement of such rights through the government enforcement agencies."  (*Id.* ¶ 36.)

The plaintiff was also given access to Sodexo's Career Center website portal; after she created her own unique profile (including a username and password), which she was required to do, she got access to a list of new-hire documents and related materials — including a mandatory arbitration agreement, which she was to review, complete, and accept electronically. (ECF No. 21 at 8; ECF No. 20, Declaration of Rita Sanders ("Sanders Decl.") ¶¶ 7–8; ECF No. 20-3, Arbitration Agreement.) In order to view the arbitration agreement, a new hire clicked on a blue hyperlink accessible through the portal titled "Mutual Agreement to Arbitrate Claims." (ECF No. 21 at 9; ECF No. 20, Sanders Decl. ¶ 8.) The arbitration agreement stated:

> **Claims Covered by the Agreement**
>
> Sodexo and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my employment (or its termination), that Sodexo may have against me or that I have against any of the following: (1) Sodexo, (2) its officers, directors, employers or agents in their capacity as such or otherwise, (3) Sodexo's parents, subsidiaries and affiliated entities . . .
>
> The only claims that are arbitrable are those that are justiciable under applicable federal, state, or local law. Arbitrable claims include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation or discrimination (including, but not limited to, race, national origin, religion, sex, sexual orientation, gender identity, marital status, age, physical or mental disability or handicap, or medical condition) . . .

(ECF No. 20-3, Arbitration Agreement at 1.) Below the arbitration agreement link was the following statement: "Once you review, please click the 'Add My Signature' button. By clicking the button below, you are applying your electronic signature." (ECF No. 21 at 9; ECF No. 20, Sanders Decl. ¶ 9.) Once the employee selected the "Add My Signature" button, Sodexo's electronic tracking system created a record of the date and time that the employee clicked the button and electronically agreed to the arbitration agreement. (*Id.*) The defendant's records

4

show that the plaintiff electronically signed the arbitration agreement on November 1, 2022 at 6:32 p.m.  (ECF No. 21 at 9; ECF No. 20, Sanders Decl. ¶ 10; ECF No. 20-4, iCIMS New-Hire Records for Nadia Padmore ("iCIMS Record") at 2.)

The plaintiff also had access to a document titled "Questions and Answers About the Mutual Agreement to Arbitrate Claims," which was available through Sodexo's intranet and described the nature of arbitration and the scope of claims that must be arbitrated.  (ECF No. 21 at 11; ECF No. 20, Sanders Decl. ¶ 11; ECF No. 20-5, Questions and Answers About the Mutual Agreement to Arbitrate Claims ("Arbitration FAQs").)  The plaintiff's signature does not appear on the arbitration agreement itself, and the plaintiff maintains that she never saw the agreement. (ECF No. 22-1, Declaration of Nadia Padmore ("Pl. Decl.") ¶¶ 5–6.)  The plaintiff claims that the defendant did not give her the opportunity to discuss the arbitration agreement with her attorney during her onboarding process.  (*Id.* ¶ 7.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA has been interpreted as a 'federal policy favoring arbitration' and requiring federal courts to 'rigorously enforce agreements to arbitrate.'" *Starke v. Squaretrade, Inc.*, No. 16-CV-7036, 2017 WL 3328236, at *5 (E.D.N.Y. Aug. 3, 2017) (quoting *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 521 (E.D.N.Y. 2017)), *aff'd,* 913 F.3d 279 (2d Cir. 2019).  This "policy in favor of arbitration is limited by the principle that arbitration is a matter of consent, not coercion.  Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 415 (S.D.N.Y. 2024) (quoting *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015)).  Under the FAA, "a party may

move the district court for an order directing that arbitration proceed pursuant to the parties' written agreement." *Mumin*, 239 F. Supp. 3d at 521.  In resolving a motion to compel arbitration, the Court considers: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221–222 (2d Cir. 2019) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

Courts adjudicating motions to compel arbitration generally apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  The moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law;" once the moving party has met its burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 394 (E.D.N.Y. 2013) (citations omitted).  However, "the nonmoving party cannot survive summary judgment by casting mere 'metaphysical doubt' upon the evidence produced by the moving party" and "summary judgment is appropriate when the moving party can show that little or no evidence may be found in support of the nonmoving party's case." *Id.* (citations omitted). "On a motion for summary judgment, the court 'consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).  "In

doing so, the court must draw all reasonable inferences in favor of the non-moving party."
*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

The defendant submitted exhibits with its motion, including a declaration from Rita Sanders, the Senior Human Resources Systems Administrator at Sodexo. (ECF No. 20, Sanders Decl.) "Declarations are properly considered as evidence on a motion for summary judgment when they set forth specific facts based on a party's personal knowledge." *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 431, 464 n.208 (S.D.N.Y. 2012); *see also Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("An affiant's conclusions based on personal observations over time, however, may constitute personal knowledge, and an affiant may testify as to the contents of records she reviewed in her official capacity. The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge."); *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022) (a "reasonable trier of fact" could find that a witness had "enough working knowledge" based on his "senior position" and "length of tenure," which "presumptively [gave] him broad familiarity with his agency's pay practices," and because his statements were based on "books and records").

The plaintiff does not challenge the accuracy of Sander's statements in the declaration but asserts that Sanders "lacks the required personal and actual knowledge" because she "does not appear to have been involved in Plaintiff's hiring" and "does not seem to have a technical background as to electronic matters/evidence." (ECF No. 22 at 25.) This argument is baseless. In her declaration, Sanders stated that (1) she has worked at Sodexo since 1998 and has been overseeing the systems that track candidates since 2018; (2) she is "deeply familiar" with Sodexo's policies and procedures for managing and tracking employee onboarding; (3) she has

7

access to records that document completion of employee onboarding requirements, including those the defendant submitted as exhibits; and (4) she personally reviewed the business records related to the plaintiff.  (ECF No. 20, Sanders Decl. ¶¶ 2–5.)  The Court therefore considers this declaration as it would on a motion for summary judgment.

## DISCUSSION

### I.    The FAA's Applicability

The Court first addresses the plaintiff's argument that the FAA does not apply because the defendant has not established the "interstate commerce requirements under the FAA."  (ECF No. 22 at 18–21.)  *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019) ("[T]o invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2.").  The plaintiff asserts that she was not "engaged in interstate commerce" because her work was purely local, and thus the FAA does not apply.  She does not argue that she is exempted under Section 1 of the FAA, which covers a "class of workers engaged in foreign or interstate commerce."  9 U.S.C.A. § 1.[5]  The plaintiff appears to confuse the requirement under Section 2 of the FAA — that the Act applies to agreements "evidencing a transaction involving commerce" — with Section 1's exclusion for "contracts of . . . any other class of workers engaged in foreign or interstate commerce."  9 U.S.C.A. §§ 1–2.  In other

---

[5] The plaintiff could not prevail even if she did claim that the Section 1 exemption applies.  The plaintiff worked in the airport, and she does not allege that she "play[ed] a direct and 'necessary role in the free flow of goods' across borders."  *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022); *compare id.* ("[O]ne who loads cargo on a plane bound for interstate transit is intimately involved with the commerce (*e.g.,* transportation) of that cargo.") *with United States v. Yellow Cab Co.,* 332 U.S. 218, 233 (1947) ("[W]hen local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation."), *overruled on other grounds by Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752 (1984).

words, while the FAA covers contracts "involving commerce," it specifically excludes "workers engaged in . . . interstate commerce." *See Oliveira*, 586 U.S. at 110.[6]

The Section 2 commerce requirement "is interpreted 'broadly, extending the [FAA's] reach to the limits of Congress' Commerce Clause power' and encompassing activities that generally 'affect' or 'involve' commerce." *Simeon v. Domino's Pizza LLC*, No. 17-CV-5550, 2019 WL 7882143, at *3 (E.D.N.Y. Feb. 6, 2019) (quoting *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268 (1995)). "[T]he commerce requirement under the FAA may be satisfied 'without showing a specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control.'" *Id.* (quoting *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003)). The plaintiff alleges that the defendant "was in the business of operating restaurants and food outlets," and the plaintiff's responsibilities included "setting up outlets, cleaning up, loading/unloading, packing, unpacking, moving, [and] serving food" at "JFK Airport." (ECF No. 1 ¶¶ 13, 16.) These responsibilities satisfy the FAA's commerce requirement. *See Simeon*, 2019 WL 7882143, at *3 (commerce requirement satisfied because the agreement "relates to . . . the preparation and delivery of meals to individuals in exchange for payment" and "a business that uses materials and ingredients involved in interstate commerce"); *Allied-Bruce*, 513 U.S. at 282 (commerce requirement satisfied because "the termite-treating and house-repairing material used by [the appellant] . . . to carry out the terms of the [contract] came from outside Alabama"). And regardless, "[e]mployment contracts, except for those covering workers engaged in transportation, are

---

[6] The Supreme Court has interpreted Section 1 to "exempt[] from the FAA only contracts of employment of transportation workers," *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001), but has advised that a "transportation worker need not work in the transportation industry" to be exempted under Section 1, *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024).

covered by the FAA." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA applies to the contract at issue here.

## II.     Whether the Parties Agreed to Arbitrate

Because the FAA applies, the Court must determine whether there is a valid arbitration agreement between the parties. Here, the threshold question is whether the plaintiff executed the arbitration agreement as part of her onboarding. The defendant argues that a valid arbitration agreement exists because the plaintiff (1) "provided her express acceptance of Sodexo's arbitration program by signing her Offer Letter," (2) "confirmed her acceptance of the Arbitration Agreement by verifying her acceptance of the agreement and applying her electronic signature through the Sodexo Career Center website portal," and (3) worked for the defendant for almost two years with the knowledge that her employment was conditioned on her acceptance of the arbitration agreement. (ECF No. 21 at 14–16.) The plaintiff says that she never saw or signed an arbitration agreement; she asserts that her electronic signature is not on the arbitration agreement and although she signed the offer letter, it is not itself an arbitration agreement. (ECF No. 22 at 10–16.)

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012).[7] To form a valid contract under New York law, "there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 491 F. Supp. 2d 403, 408 (S.D.N.Y. 2007)

---

[7] Although the agreement is silent as to which state's law governs, the parties' arguments presume that New York law applies. To determine the law governing contract formation, New York uses an "interest analysis," which considers "[i] the place of contracting; [ii] the place of the contract negotiations; [iii] the place of the performance of the contract; [iv] the location of the subject matter of the contract; and [v] the domicile, residence, nationality, places of incorporation, and places of business of the parties." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 287 (S.D.N.Y. 2025). Because the parties are both located in New York and the plaintiff's employment occurred in New York, New York law governs.

(quoting *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir. 2004)).  "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Id.* (quoting *Maffea v. Ippolito,* 247 A.D.2d 366, 367 (2d Dep't 1998)).  The defendant "bear[s] the initial burden of showing that an agreement to arbitrate was made." *Palmer*, 735 F. Supp. 3d at 416; *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) ("[T]his burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." (citation omitted)).

The defendant has met its burden.  "Courts consistently compel arbitration of employment claims pursuant to valid arbitration agreements in offer letters." *Etienne v. Barclays Bank*, No. 18-CV-5168, 2019 WL 3325841, at *2 (S.D.N.Y. July 24, 2019); *see id* (collecting cases).  In addition, a promise of employment is sufficient consideration for an arbitration agreement.  *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 241 (S.D.N.Y. 2020) ("Courts have held that an offer of continuing employment alone is sufficient consideration to support an agreement for arbitration."), *objections overruled,* No. 10-CV-6950, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *Stern v. Espeed, Inc.*, No. 06-CV-958, 2006 WL 2741635, at *2 (S.D.N.Y. Sept. 22, 2006) ("In the specific context of post-employment arbitration agreements, several courts in this District have held that the continuation of employment alone is sufficient consideration to enforce such an agreement.").  In support of its motion, the defendant submitted the offer letter that the plaintiff signed; the "terms of employment statement" attached to the offer letter provides that "[a]s a condition of your employment, you are also required to sign and comply with an Employment Arbitration Agreement," which includes a "waiver of the right to bring a civil action in federal or state court before a civil judge or jury."  (ECF No. 20-2, Offer Letter at 3.)  At the end of the document the

plaintiff signed her name to verify that she "read and accept[s] this employment offer and the Terms of Employment Statement." (*Id.* at 5.) The plaintiff then worked for the defendant for almost two years. *See Pettersen v. Volcano Corp.*, No. 18-CV-3021, 2020 WL 6323937, at *6 (E.D.N.Y. Sept. 8, 2020) ("There is no dispute that before she began employment, Plaintiff was aware, through the Offer Letter Arbitration Clause, that [the defendant] had a policy to arbitrate employment disputes . . . . Although Plaintiff claims she believed the scope of the Offer Letter Arbitration Clause was narrower than that in the Arbitration Agreement . . . , she nevertheless agreed to [the defendant's] arbitration policy when she began and continued her employment there."), *report and recommendation adopted,* No. 18-CV-3021, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020).

In addition to the offer letter, the defendant submitted evidence that the plaintiff "verif[ied] her acceptance of the agreement and appl[ied] her electronic signature through the Sodexo Career Center website portal." (ECF No. 21 at 15.) Rita Sanders, the defendant's Senior Human Resources Systems Administrator, stated that to complete the onboarding process, the plaintiff was required to create her own profile on Sodexo's Career Center website portal. (ECF No. 20, Sanders Decl. ¶ 7.) Once the plaintiff got access to the portal, she would have seen a "list of new-hire documents and related materials to review, complete, and/or electronically sign." (*Id.* ¶ 8.) One of the documents was a "Mutual Agreement to Arbitrate Claims" — the same arbitration agreement to which the offer letter referred. (*Id.*) To view the arbitration agreement, the plaintiff would have clicked a blue hyperlink which displayed the arbitration agreement in a separate tab. (*Id.*) Below the blue hyperlink was the following statement: "Once you review, please click the 'Add My Signature' button. By clicking the button below, you are applying your electronic signature." (*Id.* ¶ 9.) Once the employee clicks the "Add My

Signature" button, "Sodexo's electronic applicant tracking system automatically creates a record memorializing the date and time the employee clicked the button and electronically agreed to the Arbitration Agreement." (*Id.*) The defendant submitted a copy of the Sodexo's electronic applicant tracking system records, which shows that the plaintiff clicked the "Add My Signature" button — thereby accepting the arbitration agreement — on November 1, 2022, at 6:32 PM. (*Id.* ¶ 10; ECF No. 20-4, iCIMS Record at 2.)

Because the defendant has met its burden of showing a valid arbitration agreement, the burden shifts to the plaintiff to demonstrate a "substantial issue on the existence" of the agreement. *Hamrit v. Citigroup Glob. Markets, Inc.*, 22-CV-10443, 2024 WL 1312254, at *5 (S.D.N.Y. Mar. 26, 2024) (citation omitted). "This requires [the plaintiff] to come forward 'with at least *some evidence* to substantiate [her] denial that an agreement had been made.'" *Palmer*, 735 F. Supp. 3d at 418 (emphasis in original) (quoting *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022)); *see also Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.").

The plaintiff argues that she did not agree to arbitration by signing the offer letter because (1) the offer letter says that it is not a contract, and (2) the offer letter said that the plaintiff would need to sign an arbitration agreement, so it was, at most, "an agreement to agree by signature and the subsequent agreement never materialized and was never signed." (ECF No. 22 at 12–15.) As the plaintiff points out, the offer letter says "[n]othing in this letter, the included Terms of Employment Statement, or statements made by a Sodexo representative are intended to create a contract." (ECF No. 20-2, Offer Letter at 2.) However, the subsequent sentences say: "This

letter contains all the commitments that have been extended to you and you should not rely on any verbal promises or other representations that are not included. Employment with Sodexo is at-will." (*Id.*) By using this language, the defendant was not saying that the offer letter had no contractual value at all; rather, the defendant was advising the plaintiff that she was an at-will employee. *See Lopez v. Lidl US, LLC*, No. 22-CV-4271, 2023 WL 2674757, at *4 (S.D.N.Y. Mar. 29, 2023) (offer letters that say they are not "contract[s] of employment for any definite period of time" do not "indicate that the offers letters have *no* contractual value, but merely explain[] that Plaintiff would be an employee 'at-will', meaning that either party could terminate her employment at any time for any reason"), *reconsideration denied,* 2024 WL 1329776 (S.D.N.Y. Mar. 28, 2024).

The plaintiff's argument that the offer letter was merely "an agreement to agree" to an arbitration is unpersuasive. The attachment to the letter included explicit terms: that agreeing to arbitration was a condition of the plaintiff's employment, that the plaintiff should review the agreement because it affected her legal rights and included a waiver of the right to a jury trial, and that she had to sign the agreement before her first day of work. (ECF No. 20-2, Offer Letter at 3.) The plaintiff signed the letter and started working for the defendant, which she did for almost two years.

The plaintiff also disputes that she electronically signed the arbitration agreement, because her signature is not on the agreement itself. (ECF No. 22 at 11.) In her declaration, she also says that she never saw the arbitration agreement and never agreed to arbitrate. (ECF No. 22-1, Pl. Decl., ¶¶ 5–6.) These arguments are insufficient to "substantiate [her] denial that an agreement had been made." *Palmer*, 735 F. Supp. 3d at 418 (citation omitted). In *Palmer v. Starbucks Corp.*, the court addressed an almost identical question: whether Palmer executed an

14

arbitration agreement as part of his onboarding at Starbucks.  Starbucks' records showed that Palmer electronically signed the agreement, but the defendants did not provide a copy of the agreement with Palmer's signature.  735 F. Supp. 3d at 417.  Like the plaintiff, Palmer disputed that he signed an arbitration agreement.  However, Starbucks' Director of Talent Acquisition submitted an affidavit explaining that (1) signing an arbitration agreement was a condition of employment, and (2) the onboarding process required electronically signing various forms, including an arbitration agreement.  *Id.*  Starbucks also attached excerpts from Palmer's file, which reflected the date and time that he electronically signed the arbitration agreement.  *Id.*

The court held that "the detailed information provided in the [] Affidavit, combined with the attached exhibits including records from Palmer's [] file, overwhelmingly establishes that an arbitration agreement existed with Palmer prior to him commencing his employment with Starbucks, even without Defendants providing the actual signed agreement."  *Id.* at 417–18; *see also id.* at 417 ("[T]he FAA does not require the Defendants to produce a signed copy of the Arbitration Agreement." (quoting *Marcario v. Midland Credit Mgmt., Inc.*, No. 17-CV-414, 2017 WL 4792238, at *4 (E.D.N.Y. Oct. 23, 2017))).  The court also found that Palmer "present[ed] no reason to question the integrity or accuracy of any of the detailed information in the [] Affidavit regarding the employee application and onboarding process at Starbucks at the time of his application;" rather, he "claims that he does not recall signing an agreement to arbitrate during the hiring and onboarding process."  *Id.*[8]

---

[8] Although the facts in Palmer are almost identical to the facts in this case, the plaintiff does not address *Palmer,* even though the defendant cited it.  Instead, the plaintiff cites cases that are clearly distinguishable, and argues that she is entitled to a jury trial on the question of whether there was a valid agreement.  (ECF No. 22 at 15–16.)  *See Ayad v. PLS Check Casher of N.Y., Inc.*, No. 20-CV-1039, 2021 WL 4272472, at *4 (E.D.N.Y. Sept. 21, 2021) (the plaintiff "raised a material question of fact as to whether he was presented with the full arbitration agreement" and not just the signature page); *Gomez v. Winn Mgmt. Grp. LLC*, No. 18-CV-8559, 2019 U.S. Dist. LEXIS 92571, *2 (S.D.N.Y June 3, 2019) (finding "that a genuine issue of material fact exists as to whether Plaintiff agreed to arbitrate his claims

The plaintiff must do more than simply "rest on a denial;" she "must submit evidentiary facts showing that there is a dispute of fact to be tried." *Neidhardt*, 56 F.3d at 358. The plaintiff does not submit any such evidence. Although she challenges Rita Sanders' personal knowledge, she does not dispute the factual assertions in Sanders' affidavit — that the plaintiff was required to create her own profile on Sodexo's Career Center website portal to complete her onboarding, that she was presented with a list of new-hire documents in the portal to sign (including the arbitration agreement), that she clicked the blue hyperlink to view the agreement, and that Sodexo's electronic applicant tracking system records shows that she clicked the "Add My Signature" button on November 1, 2022, at 6:32 PM. Thus, a there is a valid arbitration agreement between the parties.

## III.    Scope of the Arbitration Agreement

Having found that a valid arbitration agreement exists, the Court considers the scope of the agreement. "'Under the FAA, there is a general presumption that the issue of arbitrability,' *i.e.*, the question of whether a particular issue is to be arbitrated, 'should be resolved by the courts.'" *Palmer*, 735 F. Supp. 3d at 418 (quoting *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)). "However, '[j]ust as the parties may elect through their contract to have arbitrators (rather than a court) resolve categories of disputes between them, they may similarly contract to have arbitrators (rather than a court) decide whether a particular dispute is to be arbitrated under the terms of the contract.'" *Id.* (quoting *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 189-90 (2d Cir. 2019)). "When parties' valid agreements lack a delegation clause, the court's task is clear: determine arbitrability for itself." *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 291 (S.D.N.Y. 2025). But "when parties have clearly confirmed their intent to

---

with Defendant" because the plaintiff "put[] forward evidence" challenging the defendant's training log).

delegate questions of arbitrability and neither challenges that provision specifically, the court is to leave the arbitrability decision to the arbitrator." *Id.  See also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (citation omitted) (cleaned up)).  "Incorporating the JAMS rules into an arbitration agreement by reference constitutes clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to an arbitrator." *Silva v. Schmidt Baking Distribution, LLC*, 732 F. Supp. 3d 194, 208 (D. Conn. 2024) (cleaned up); *see also Emilio v. Sprint Spectrum L.P.*, 508 F. App'x. 3, 5 (2d Cir. 2013) (finding incorporation of JAMS rules was clear and unmistakable delegation of arbitrability issues); *Aksman v. Greenwich Quantitative Rsch. LP*, 563 F. Supp. 3d 139, 154 (S.D.N.Y. 2021) (the parties "clearly and unmistakably agreed to delegate to the arbitrator broad authority to determine arbitrability" because they "incorporated the rules of the JAMS arbitral forum into their agreement"); *Mackris v. O'Reilly*, No. 17-CV-9483, 2019 WL 11000205, at *6 (S.D.N.Y. Mar. 6, 2019) ("The Arbitration Clause in the [] Agreement incorporates the JAMS Comprehensive Arbitration Rules . . . . Thus, there is no doubt that the [] Agreement also clearly and unmistakably delegates, in writing, the threshold question of arbitrability to an arbitrator.").

The parties' arguments presume that the Court has authority to determine questions of arbitrability.  However, the arbitration agreement says that "[t]he arbitration will be held under the auspices of the professional arbitration firm JAMS (or any successor of JAMS) and the arbitration shall be held in accordance with the JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration."  (ECF No. 20-3 at 4.)  Rule 11(b) of the JAMS Employment Arbitration Rules & Procedures provides that "Jurisdictional and arbitrability disputes, including

17

disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.  Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."  JAMS Employment Arb. Rs. & Procs. R. 11(b) (effective June 1, 2021).  This is "clear and unmistakable evidence that the parties agreed to delegate questions of arbitrability to an arbitrator."  *Silva,* 732 F. Supp. 3d at 208 (citation omitted) (cleaned up).  Thus, the question of whether the arbitration agreement covers the plaintiff's claims, as well as the plaintiff's arguments that the defendant SDH Services West, LLC is not a party to the agreement and the agreement is unconscionable because the plaintiff did not have an opportunity to consult an attorney, are delegated to the arbitrator for resolution.  *See e.g., Silva*, 732 F. Supp. 3d at 207 (""[D]isputes over validity,' which Rule 11(b) delegates to the arbitrator, include disputes over unconscionability."); *Contec Corp.*, 398 F.3d at 211 (question of whether a non-signatory to an arbitration agreement had a right to enforce the agreement was "a matter of the Agreement's continued existence, validity and scope" and was "therefore subject to arbitration under the terms of the arbitration clause").

## IV.    Arbitrability of Statutory Claims

Next, the Court must determine whether the plaintiff's federal statutory claims are "nonarbitrable."  *Abdullayeva*, 928 F.3d at 221–222.  The plaintiff brings two federal statutory claims: one under the FLSA and one under the FMLA.  "[T]he Second Circuit and courts in this District repeatedly have found FLSA claims to be arbitrable."  *Martinez v. GAB.K, LLC*, 741 F. Supp. 3d 26, 36 (S.D.N.Y. 2024); *see also Rodriguez–Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) (FLSA claims are arbitrable); *Sutherland v. Ernst & Young LLP*, 726 F.3d

290, 297 (2d Cir. 2013) ("[T]he FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms." (citation omitted)); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 304 (S.D.N.Y. 2010) ("The Court therefore concludes that Congress did not intend FLSA claims to be non-arbitrable."), *aff'd*, 408 F. App'x 480 (2d Cir. 2011).[9]  Courts in this Circuit have also granted motions to compel arbitration of FMLA claims.  *See Martin v. SCI Mgmt. L.P.*, 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) ("there is no indication that Congress intended any of the plaintiff's claims" — including an FMLA claim — "to be nonarbitrable"); *Stewart v. Paul, Hastings, Janofsky & Walker,* 201 F. Supp. 2d 291, 294 (S.D.N.Y. 2002) (granting motion to compel arbitration of FMLA and other claims); *Singh v. Meetup LLC*, 750 F. Supp. 3d 250, 260 (S.D.N.Y. 2024) (granting motion to compel arbitration of FMLA retaliation and other claims), *reconsideration denied,* No. 23-CV-9502, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).

The plaintiff nevertheless argues that mandating arbitration "violates the anti-retaliation provisions of the FLSA and NYLL" because those statutes give plaintiffs a right to bring claims in court, objecting to a waiver of this right is a protected activity, and terminating an employee because she engaged in this protected activity is an adverse employment action.  (ECF No. 22 at 21–23.)  The plaintiff concedes that a plaintiff can waive the right to bring FLSA claims in court,

---

[9] The plaintiff maintains that case law supports her position that the FLSA "prohibits agreements and provisions that are in strong tension with the remedial purpose of the of the FLSA."  (ECF No. 22 at 22.)  It does not.  The cases on which the plaintiff relies bar settlement agreements that prohibit future employment relationships between plaintiffs and defendants.  *See, e.g.*, *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at 5 (S.D.N.Y. Oct. 5, 2020) ("Courts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA." (citation omitted)); *Baikin v. Leader Sheet Metal, Inc.*, 16-CV-8194, 2017 WL 1025991 at *1 (S.D.N.Y. Mar. 13, 2017) (prohibitions on future employment with defendants are "highly restrictive provision[s] in strong tension with the remedial purposes of the FLSA." (citation omitted)).  The plaintiff does not explain how these holdings prohibit arbitration agreements.

but says that this case "presents a different question" — "whether she can refuse to waive that right and whether the employer can terminate her employment for refusing to waive her FLSA and NYLL right to bring an action in Court." (*Id.*)  The plaintiff's arguments are meritless.  As the defendant notes, the plaintiff does not claim that she was terminated for refusing to sign the arbitration agreement (ECF No. 23 at 12); she alleges that she was terminated for taking FMLA leave (ECF No. 1 ¶ 61).  Nor was the plaintiff terminated for failing to sign the agreement because the agreement also provided that she could not start work unless she signed the arbitration agreement (ECF No. 20-2, Offer Letter at 3), a practice courts in this Circuit have allowed.  *See Stewart*, 201 F. Supp. 2d at 294 ("[T]he suggestion that the agreement is unenforceable because plaintiff was obliged to agree to it as a condition of her employment is without merit."); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 78 (S.D.N.Y. 2015) (upholding arbitration agreement in handbook that was an express condition of employment), *aff'd,* 659 F. App'x 40 (2d Cir. 2016).

## V.     N.Y. CPLR § 7515

The plaintiff also argues that Section 7515 of the New York Civil Practice Law and Rules (CPLR) prohibits mandatory arbitration clauses.  (ECF No. 22 at 23.)  The defendant asserts that courts have "repeatedly held that this statute is preempted by the FAA."  (ECF No. 23 at 12.) "The effect of Section 7515 on the arbitration clause is categorically different" from the "questions of arbitrability" that "are reserved for the arbitrators;" "[i]t goes to whether the [] Defendants had the power in the first place to demand the arbitration with respect to the type of claims Plaintiff asserts here and whether that clause is of any legal effect whatsoever, regardless of whether Plaintiff's claims fall within the clause's scope."  *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 395 (S.D.N.Y. 2021).  "This question thus is reserved for the Court to decide."  *Id.*

CPLR Section 7515 provides that "[e]xcept where inconsistent with federal law, no written contract, entered into on or after the effective date of this section shall contain a prohibited clause."  C.P.L.R. § 7515(b)(i).  A "prohibited clause" is defined as "any clause or provision in any contract which requires as a condition of the enforcement of the contract or obtaining remedies under the contract that the parties submit to mandatory arbitration to resolve any allegation or claim of discrimination."  C.P.L.R. § 7515(a)(2).  By its own terms, Section 7515 does not apply "where inconsistent with federal law."  Obviously, applying it in this context would be inconsistent with the FAA.  *See Latif v. Morgan Stanley & Co. LLC*, No. 18-CV-11528, 2019 WL 2610985, at *3 (S.D.N.Y. June 26, 2019) ("Here, application of Section 7515 to invalidate the parties' agreement to arbitrate [the plaintiff's] claims would be inconsistent with the FAA.  The FAA sets forth a strong presumption that arbitration agreements are enforceable and this presumption is not displaced by § 7515."); *Whyte v. WeWork Co.*, No. 20-CV-1800, 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020) ("Since CPLR § 7515 is displaced by the FAA, [the plaintiff] may not rely on it to defeat [the defendant's] motion to compel arbitration."); *Gilbert*, 513 F. Supp. 3d 374, 399 (S.D.N.Y. 2021) ("[T]he Court cannot apply Section 7515 to relieve Plaintiff from the effect of her arbitration agreement even as to her state claims.").

Courts in this Circuit have also held that Section 7515 does not fall within the FAA's "savings clause" — that an arbitration agreement is valid "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  *See Whyte*, 2020 WL 3099969, at *5 ("Because CPLR § 7515 applies to a specific type of claim, rather than a generally applicable defense, it does not fall within the FAA's savings clause."); *Latif*, 2019 WL 2610985, at *3

("[T]he FAA's saving clause does not render the parties' Arbitration Agreement unenforceable here.").

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is granted and this action is stayed pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); 9 U.S.C. § 3 ("[T]he court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      September 30, 2025